JOHNSON *v.* MORRISON.

1. FRAUDS, STATUTE OF—PART PAYMENT—REQUIREMENTS.
   A sale of personal property, of the value of $50 or more, is invalid unless there is a delivery, a part payment, or a writing signed by the party to be charged. 3 Comp. Laws, § 9516.

2. SAME—PAYMENT.
   Part payment may be made in money or anything of value.

3. SAME—LOGS AND LOGGING—SALES.
   But delivering to the owner of logs, an order on the clerks of the purchaser, for the payment of a portion of the price, did not constitute a sufficient part payment to bind the contract, where the owner, a Finn, was unable to read it, took it to an interpreter, and, on learning the contents, returned it to the buyer, and sold the logs to plaintiff.

Error to Houghton; Streeter, J. Submitted October 17, 1910. (Docket No. 66.) Decided November 11, 1910.

Trover and case by Andrew Johnson against Charles J. Morrison for the conversion of logs. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*P. H. O'Brien*, for appellant.

*Allen F. Rees*, for appellee.

McALVAY, J. This is an action in trover brought by plaintiff against defendant's decedent for the value of certain saw logs claimed to have been wrongfully converted by him. The trial resulted in a verdict instructed by the court for defendant. Plaintiff has removed the case to this court for review, asking a reversal of the judgment entered in accordance with such verdict, alleging error,

upon such action of the court.   The logs in question were originally the property of a man named Matt Sturback, and were by him cut and hauled to the railroad, at or near Arnheim, in Baraga county.   Sturback is a Finn who cannot read, write, or speak the English language, and all communications with him by persons unable to speak Finnish must be by interpreter.   The plaintiff and defendant both claim title to this property by purchase from Sturback.

On or about April 11, 1906, Sturback, with his stepson as interpreter, went to Ewen McDonald, who was buying logs at Arnheim as agent for defendant's decedent, and entered into negotiations with him to sell the logs in question.   After looking over the logs together, McDonald made an offer of a price per foot, conditioned upon Sturback loading the logs, and made a rough estimate of the quantity of the logs.   Sturback insists that he refused to agree to load the logs upon the cars at his own expense.   McDonald would not agree to stand the expense of loading the logs and referred him to Mr. Morrison.   It was understood that an immediate payment was to be made to apply on the purchase.   Sturback says that he asked for $275, which was refused by McDonald, who offered a payment of $260.   McDonald testifies that he offered $250.   McDonald then went to his house and wrote the following letter to his employer:

> "ARNHEIM, BARAGA COUNTY, MICH.
> "April 11, 1906.

"Mr. J. S. MORRISON,
　"*Dear Sir:*

"I bought the logs from Matt Sturback, Kinnenin's neighbor, at 7c per ft. from 8 ft. to 18 ft., from 18 to 24, 8c, from 24 up, 9c a foot on the car.   You may explain to him about the loading part too.   He is wanting money now.   I gave rough estimate on the logs; but I kept back enough to load the logs if he fails to do it himself and more too.   So as if you are agreed with the way I made the bargain you need not be afraid of giving him the amount which I give you here I figured up myself.   I think it

safe enough to give him two hundred and thirty dollars,
$230.

> "Yours truly,
> "Ewen McDonald."

He inclosed it with another letter to Morrison, on other
business, in an envelope which, we infer from the testi-
mony, was sealed, and gave it to Sturback, who delivered
it to Morrison. The contents of the second letter are not
given because not material. Some conversation was had
with Sturback about the purchasing and loading of the
logs; the stepson acting as interpreter. There is a dis-
pute as to what was said, or whether an agreement was
entered into. Testimony is in the record tending to show
that Sturback refused to load the logs, and on the part of
defendant that Morrison agreed to load them. Morrison
took one of the letters and wrote on it to the clerks in his
office the following order:

> "April 11, 1907.
>
> "Mr. Robert M. Allen or
> "Miss Jean Allen:
> "You will please pay the bearer, Matt Sturback, two
> hundred and thirty ($230.00) dollars, on account of logs.
> "J. S. Morrison."

He handed this to Sturback, who took the letters and
order to Hancock to Charles Ossila (who acted as inter-
preter on the trial) to translate for him. When he learned
the contents of these papers, he at once returned them to
Mr. McDonald and informed him that the transaction
was ended. McDonald sent the papers to Morrison.
Later Mr. Morrison sent a letter to Sturback as follows:

> "Calumet, Mich., April 18, 1907.
>
> "Mr. Matt Sturback,
> "Jacobsville, Mich.
> "*Dear Sir:* I am going to take away those logs I
> bought from you at Arnheim. We will begin to load
> them on cars very soon. We will measure, count and
> scale the logs as we load them. If you would like to
> have a man there to scale, or see the logs scaled send him
> at once.        "Yours truly,
> "J. S. Morrison."

As soon as he received this letter, he procured an interpreter, and with him went to Morrison and handed him the letter, telling him, through the interpreter who translated for both of them, to leave the logs there and not to load them. This interpreter testifies that Morrison then asked him if he would sell the logs to him if he would give him the same price as Johnson offered; that Sturback answered that he could not; that he had already sold them to Johnson. Afterwards Morrison loaded these logs, removed them by rail, and sold them to the Calumet & Hecla Company. When plaintiff bought the logs from Sturback he paid $275, and has since paid him enough to make $660. The court directed a verdict for defendant, and the foregoing statement of facts is therefore made with reference to the evidence offered by plaintiff, under the rule that in such cases plaintiff's evidence must be taken as true.

The claim of plaintiff is that the court was in error in holding that the minds of Sturback and Morrison met at time the letter from McDonald was presented and the matter was talked over and Morrison wrote the order to' his clerks, and that the order to Morrison's clerks received by Sturback amounted to a part payment for the logs.

To make a sale of personal property of the value of $50 or more valid, one of the three requirements of the statute of frauds must be fulfilled: There must be a delivery, a part payment, or a writing signed by the party to be charged. We agree with the contention of plaintiff that no contract was made with McDonald, and therefore a delivery must have been made to Morrison. The record does not show, nor does counsel for defendant claim, that a delivery was made to him; nor does it appear that any writing was signed by Sturback.

Was part payment made by this order to Morrison's clerks? If it was not, no valid sale was made to Morrison, and by the sale subsequently made by Sturback to the plantiff these logs became plantiff's property. Part payment may be made in money or in anything of value.

Whether this order was a thing of value must be determined from the instrument itself. It is not a check, nor is it a promise to pay. If it may be treated as of equal binding force as a check—which we do not determine—we find that the authorities go no further than to say that "a check given by the buyer, when it is accepted in payment and is actually paid, satisfies the statutes." 29 Am. & Eng. Enc. Law (2d Ed.), p. 970, and authorities cited. Except the taking of the paper by Sturback, there is no proof that it was accepted in payment and the inference from what Sturback immediately did is that it was taken to ascertain what these writings were. The evidence is uncontradicted that he went at once to one who could translate for him, and, ascertaining what they were, immediately returned them to Mr. McDonald, the log buyer, stating that he would have nothing further to do with the transaction. The order was never paid. The check cases therefore do not cover this case.

There is some dispute between counsel as to whether the order in question was written by Morrison on the letter McDonald wrote for Sturback to take to him, or on the other letter which McDonald inclosed with it in the same envelope. The record is somewhat confusing, but it was probably written on the other letter. It is of no consequence, for the reason that both of these letters were in the same envelope. They were delivered to Morrison at the same time. He wrote the order on one of them at the railroad siding or switch, then put both of them back into the envelope, and gave them to Sturback. McDonald testifies that both papers were sent by him to Morrison, and both were produced in court by defendant. What Sturback did with these papers in returning them to McDonald, and not the words he spoke in the Finnish language, indicates his intention. Notice of what Sturback had done was thus brought home to Morrison at the time, and also later by Sturback when he returned the registered letter to Morrison telling him not to move the logs and that he had sold them to plaintiff. Our conclusion is that there was

no acceptance of this order by Sturback, and no part payment was made upon this property, and therefore that no valid contract of sale was made. The court was in error in instructing a verdict for defendant.

Other questions presented require, under the circumstances, no discussion.

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., concurred.